```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA

PERRY BLANKENSHIP,                )
                                  )
              Plaintiff,          )
                                  )
                                  )   Case No. CIV-18-148-RAW-KEW
                                  )
COMMISSIONER OF SOCIAL            )
SECURITY ADMINISTRATION,          )
                                  )
              Defendant.          )
```

### REPORT AND RECOMMENDATION

Plaintiff Perry Blankenship (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means

---

[1]     Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 60 years old at the time of the ALJ's decision. She has a high school education and has worked in the past as a telemarketer and receptionist. Claimant alleges an inability to work beginning on March 15, 2015, due to limitations resulting from bronchitis and diabetes-related symptoms, including problems with her vision and circulation.

**Procedural History**

On August 20, 2015, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications

3

were denied initially and upon reconsideration. On October 25, 2016, Administrative Law Judge("ALJ") J. Dell Gordon conducted an administrative hearing in Oklahoma City, Oklahoma. On March 9, 2017, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on March 14, 2018, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by failing to develop the record regarding her blurred vision. She further asserts that even if the ALJ did not consider her blurred vision a severe impairment, he should have considered it in the RFC determination.

### Development of the Record

In his decision, the ALJ found Claimant suffered from severe impairments of diabetes mellitus (with peripheral neuropathy) and chronic bronchitis. (Tr. 18-19). He determined Claimant could perform light work with additional limitations. In so doing, he found Claimant could occasionally lift, carry, push, or pull twenty

4

pounds, sit for a total of six hours in an eight-hour workday, and stand or walk for six hours in an eight-hour workday. Claimant should avoid exposure to concentrated pulmonary irritants. (Tr. 19).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant retained the RFC to perform her past relevant work as a telemarketer and receptionist. (Tr. 23, 45-46). As a result, the ALJ concluded Claimant was not under a disability from March 15, 2015, through the date of the decision. (Tr. 24).

Claimant contends the record contains evidence that she suffers from a vision impairment, and the ALJ should have ordered a consultative examination to investigate the extent of the impairment and/or should have requested medical records from her eye doctor regarding her blurred vision.

The ALJ considered the evidence of record, which included Claimant's treatment at the Open Arms Clinic for diabetic and bronchitis-related symptoms. In July of 2015, Claimant reportedly had not been taking medication for her diabetes for four months. She was working and reported blurred vision. Her primary concern was related to skin lesions based upon two prior melanomas, which were benign. (Tr. 21, 349-50). When Claimant returned near the end of August of 2015, she complained of worsening symptoms of diabetes, including blurred vision, but indicated she had seen an eye doctor and he recommended new glasses. (Tr. 21, 354).

5

On November 7, 2015, Claimant underwent a consultative examination by Dr. Zachary Nicholas, M.D. Addressing her blurred vision, he noted Claimant had a longstanding history of poorly controlled diabetes, approximately eight years, even though she saw a doctor monthly and took her medications as prescribed. Dr. Nicholas noted that over the eight years, Claimant experienced occasional episodes of blurred vision, despite visits to an optometrist and changing her glasses regularly. She described her blurred vision as not constant but that it "comes and goes at times." Upon physical examination, Dr. Nicholas found Claimant's visual acuity was 20/40 in both the right and left eyes without glasses. (Tr. 22, 336-42).

Claimant returned to the Open Arms Clinic on November 12, 2015. She did not complain of any vision problems. (Tr. 358). The next treatment records for Claimant range from March of 2016 through September of 2016. Claimant had no complaints regarding her vision. (Tr. 22, 364, 366, 369, 373-76, 379-82, 384, 388). In fact, at her visit in July of 2016, she indicated that she was working and had injured her toe on the job. (Tr. 22, 379). She later explained at the hearing that she only worked four days. (Tr. 22, 44).

The ALJ also considered the opinions of two state agency physicians who reviewed Claimant's medical records. It was noted in the December 15, 2015 review that Claimant's "uncorrected vision

was within functional limits" at the November, 2015 consultative examination. (Tr. 22, 56, 58). The second review in February of 2016 upon reconsideration, included additional complaints by Claimant that her foot pain had worsened, she suffered from ear ringing causing lack of sleep, headaches, and depression. (Tr. 22, 76).

The ALJ "'bears responsibility for ensuring that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008), quoting *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). This responsibility involves "obtaining pertinent, available medical records which come to [the ALJ's] attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). An ALJ has broad latitude when deciding whether to order a consultative examination. *Hawkins*, 113 F.3d at 1166, citing *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990). "Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial[.] . . . When the claimant has satisfied his or her burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment." *Id.* at 1167 (citations omitted). However, when a claimant is represented by counsel, "the ALJ should ordinarily

7

be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Id*.

At the hearing on October 25, 2016, the ALJ asked Claimant's counsel if the record was complete, and counsel agreed it was. The ALJ also noted the exhibits in the record and asked Claimant's counsel if he had any objections to the exhibits. Claimant's counsel did not, and the ALJ admitted the exhibits and made them part of the record for consideration. (Tr. 34).

Claimant's counsel did not request a consultative examination regarding her vision (Tr. 30-49), and the evidence of record showed that Claimant's blurred vision was not constant and her uncorrected vision upon examination was within functional limits at 20/40 in both eyes. (Tr. 22, 336-42, 56, 58, 76). The Court finds no error by the ALJ for not ordering a consultative examination regarding Claimant's vision. *See Hawkins*, 113 F.3d at 1168 (finding that without a request by counsel, a duty will not be imposed on the ALJ to order an examination unless the need is clearly established in the record).

Moreover, there was no discussion by Claimant or her counsel at the hearing of the existence or relevance of any records from Claimant's eye doctor or that they made any attempt to obtain the

8

records on their own. The evidence contained in the record does not identify Claimant's eye doctor by name but merely references that she was seen by an eye doctor who prescribed her glasses. (Tr. 21, 336-42, 354). The Court finds the ALJ did not have a duty to obtain such records as neither Claimant nor her counsel brought the records to the ALJ's attention, and Claimant's counsel affirmed that the record was complete. (Tr. 34, 30-49); see Maes, 522 F.3d at 1097 ("In short, we will not ordinarily reverse or remand for failure to develop the record when a claimant is represented by counsel who affirmatively submits to the ALJ that the record is complete. This is particularly the case when the missing medical records are not obvious from the administrative record or otherwise brought to the attention of the ALJ. Because the records' existence and significance were not brought to the attention of the ALJ and counsel affirmatively indicated the record was complete, the ALJ did not have a duty to obtain [the] records.").

### Step Two and Four Analysis

Claimant also contends the ALJ failed to consider her blurred vision as a severe impairment at step two and further failed to consider it at step four. However, consistent with her report of disability, the ALJ considered Claimant's blurred vision as one of the related symptoms of her diabetes mellitus, which he determined was a severe impairment. (Tr. 18-19, 20, 249).

9

Moreover, the ALJ's decision demonstrates that he did not simply disregard Claimant's complaints of blurred vision when assessing her RFC. The ALJ discussed Claimant's own reports regarding her diabetes and related symptoms, noting that Claimant's symptoms of blurred vision and radiculopathy are what reportedly led to her ceasing work on March 15, 2015. He noted her reports of difficulty with standing, walking, sitting, climbing stairs, seeing, concentrating, using her hands, and getting along with others. (Tr. 20, 255-62). However, he also discussed that she had returned to work from June of 2015 to August of 2015, later quitting because of her worsening eyesight and her inability to stay seated for long periods. (Tr. 21). The ALJ also considered Claimant's reports upon her request for reconsideration and appeal, wherein she complained about a general worsening of her condition and indicated that her blurred vision had affected her driving and reading. (Tr. 20, 282, 299). The ALJ noted Claimant's testimony at the hearing that her symptoms had continued to worsen. (Tr. 20).

After considering her statements, the ALJ determined Claimant's reported symptoms were not entirely consistent with the evidence in the record. As discussed above, the ALJ considered Claimant's treatment records from Open Arms Clinic regarding her blurred vision as a symptom of her diabetes. He considered the consultative examination by Dr. Nicholas, wherein Claimant

reported she suffered from blurred vision on occasion, but it was not constant, and her eye doctor prescribed her glasses. Claimant's vision acuity was within functional limits without her eyeglasses. The ALJ also discussed Claimant's visits to the Open Arms Clinic from March of 2016 through September of 2016, wherein Claimant did not complain about her vision. He further discussed the opinions of the state agency physicians, which noted her vision was within functional limits. (Tr. 20-23).

The record indicates the ALJ considered Claimant's vision when assessing her RFC, and as discussed herein, substantial evidence supports the ALJ's RFC assessment. *See Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (affirming denial of benefits when ALJ's decision was supported by substantial evidence and the correct legal standards were applied). Those limitations found to exist by the ALJ were included in his hypothetical question to the VE. (Tr. 45-46); *see Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). Based on the VE's testimony, the ALJ determined Claimant was not disabled and could return to her past relevant work as a telemarketer and receptionist. (Tr. 23-24, 45-46).

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 5th day of September, 2019.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE